# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50361 | **DATE** | 10/22/2012 |
| **CASE TITLE** | Milliman v. McHenry County, et al. | | |

**DOCKET ENTRY TEXT:**

Defendant Krause's motion to dismiss [24] is granted. The other defendants' motion to dismiss [26] is denied.

■[ For further details see text below.]   Docketing to mail notices.

Scott Milliman, a former McHenry County deputy sheriff, initiated this lawsuit—including claims under § 1983 and under Illinois civil conspiracy law—seeking reinstatement and damages following his dismissal based on testimony given during a deposition in which he accused the McHenry County Sheriff, and other deputies, of assorted forms of corruption. Currently before this court are defendants' motions to dismiss the complaint based on an alleged failure to state a claim, qualified immunity, and the doctrine of intracorporate conspiracy. The court will grant defendant Krause's motion to dismiss the complaint for failure to state a claim against him, and deny the remaining defendants' motion.

## I. BACKGROUND

In 1997, Milliman was hired by the McHenry County sheriff's office as a deputy sheriff. At that time, and during all times mentioned in this order, Keith Nygren was the elected sheriff of McHenry County. The other named defendants, John L. Miller, Steven Schmitt, Bryan Krause, and Ken Nielson, are, or were at the time of the complaint, other deputies working for the sheriff's office.

On December 9, 2011, Miliman filed a complaint with this court alleging that on November 23, 2010, he appeared, under subpoena, to testify in a deposition in a case involving Zane Siepler, another former McHenry County deputy who also alleged retaliation. At his deposition, Milliman provided testimony alleging: (1) excessive force used by other deputies, (2) retaliation that Milliman and other deputies faced for reporting unlawful conduct, (3) Nygren's involvement in "ticket fixing," (4) Nygren's acceptance of bribes, (5) Nygren's involvement in a fraudulent scheme to procure SBA loans for individuals and then share in the proceeds while permitting the loans to go into default, (6) racial profiling by deputies, and (7) "general corruption" within the sheriff's office. Milliman also accused Nygren of soliciting him to commit two murders on Nygren's behalf and of receiving payment to smuggle illegal aliens into the country.[1] As a result of his testimony, Milliman claims that defendants retaliated against him by: submitting false reports about him to provide a basis for his termination, placing him on administrative leave due to his testimony, forcing him to undergo psychological evaluation during which defendants provided the evaluator with false information to influence the outcome, requiring him to turn in his uniform and law enforcement equipment under threat of disciplinary action, and seizing personal items in an attempt to provoke Milliman to create a pretext for his termination. In response, on May 5, 2011, Milliman filed a complaint with the EEOC, which he later amended in July 2011, alleging retaliation. On August 17, 2011,

Milliman claims that one of the defendant deputies met with him and informed him that his employment was terminated because of his testimony, the EEOC complaint, and his association with Zane Seipler.

In the instant complaint, Milliman alleges, in three counts, that (I) defendants deprived him, in violation of § 1983, of his freedom of speech by retaliating against him for speaking on a matter of public concern; (II) defendants deprived him, in violation of § 1983, of his freedom of association by retaliating against him for associating with Seipler, and (III) defendants engaged in a civil conspiracy under Illinois law to deprive him of his constitutional rights. Milliman requested reinstatement, compensatory damages, and punitive damages against each defendant and indemnification by McHenry County under 745 ILCS 10/9-102. On March 9, 2012, defendants filed a motion to dismiss, alleging that all of Milliman's counts are barred by qualified immunity. On the same day, Krause also filed a separate motion to dismiss alleging that Milliman failed to state a claim against him as to any of the claims and that the civil conspiracy claim is barred by the doctrine of intracorporate conspiracy. Krause joined in the other defendants' argument concerning qualified immunity and the other defendants joined in Krause's argument concerning the civil conspiracy count.

## II. ANALYSIS

### A. Standard of Review

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

### B. Qualified Immunity

The defendants first argue that Milliman's claims are all barred under the doctrine of qualified immunity.[2] The doctrine of qualified immunity, as explained by the Supreme Court,

> protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

Messerschmidt v. Millender, 565 U.S. ___, 132 S. Ct. 1235, 1244-45 (2012) (alterations, citations, and quotation marks omitted). When determining whether an official is covered by qualified immunity at the motion to dismiss stage, this court applies a two-prong test. First, the court asks whether, based on the facts alleged in the complaint, the plaintiff has set out a constitutional violation, and second, the court must determine if the violated constitutional right was clearly established at the time of the violation. See Pearson v. Callahan, 555 U.S. 223, 816-18 (2009) (holding that the court may consider either step first).

However, the court notes that qualified immunity is considered an affirmative defense. See Purvis v. Oest, 614 F.3d 713, 717 (7th Cir. 2010) ("Although qualified immunity is an affirmative defense, once raised, it becomes plaintiff's burden to defeat it."). Recently, the Seventh Circuit clarified that affirmative defenses cannot form the basis of a motion to dismiss under Rule 12(b)(6) when, as here, it is filed before the answer, but should instead be filed as a motion to dismiss under Rule 12(c) once all of the pleadings are complete. See

Richards v. Mitcheff, ___ F.3d ____, No. 11-3227, 2012 WL 3217627, at *2 (7th Cir. Aug. 9, 2012). Although a motion under Rule 12(b)(6) and Rule 12(c) are considered using the same standard, a complaint "need not anticipate defenses" and the defendant may choose to waive a defense by failing to raise it in its answer. Id. Additionally, after the defendant has filed an answer, the court is permitted to order a reply to provide the plaintiff the opportunity to plead the facts necessary to fall within exceptions to some defenses. See Fed. R. Civ. P. 7(a)(7). Accordingly, this court is bound to wait until after the pleadings are closed, and a motion can be brought under Rule 12(c), to consider the qualified immunity arguments.

### C. Civil Conspiracy

Defendants next argue that Count III of the complaint, which alleges that defendants engaged in a civil conspiracy in violation of Illinois state law to deprive Milliman of his First Amendment rights, should be dismissed for failure to state a claim and should also be considered barred by the intracorporate conspiracy doctrine. This court shall consider each argument in turn.

The elements of an Illinois civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." Fritz v. Johnston, 209 Ill.2d 302, 317 (2004). In other words, "[i]n order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 133 (1999). Here, the complaint plausibly sets out the existence of an agreement and at least one tortious act in furtherance of it—the complaint specifically sets out a series of acts taken by the defendants in an effort to retaliate against Milliman for his speech. The majority of the acts set out in the complaint occur after Milliman's deposition and set out a pattern of retaliatory action that, if accepted as true, reasonably give rise to an inference that the deputies who performed the actions were acting in concert with one another. See id. ("A conspiracy is almost never susceptible to direct proof. Usually, it must be established from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." (citation and quotation marks omitted)); see also Rodgers v. Peoples Gas, Light & Coke Co., 315 Ill. App. 3d 340, 350 (2000) ("The conspiracy may be inferred if parties pursue the same object by common means, one performing one part and another performing another part."). However, the complaint only alleges that Krause, "[i]mmediately prior to Milliman's deposition," tried to "intimidate" Milliman and "thereby influence his testimony" by taking "away Milliman's squad car and replac[ing] it with an old, unsafe, dysfunctional squad car." (Emphasis added). The complaint does not set out how Krause, or any of the other defendants, allegedly knew the content of Milliman's testimony before he testified so as to form an agreement to punish Milliman. Although there are sufficient circumstantial allegations for this court to infer the existence of an agreement after Milliman's deposition, there is nothing in the complaint that would permit such an inference before the deposition. Accordingly, this court will grant the motion to dismiss Count III, but only as to Krause. Consequently, the court will only consider the defendants' second argument, concerning the intracorporate conspiracy doctrine, as it relates to the remaining defendants.

The intracorporate conspiracy doctrine provides that, because the acts of an agent are considered to be the acts of the principal, an agent acting within the scope of his employment cannot conspire with the principal nor with other agents.[3] See Buckner v. Atl. Plant Maint., Inc., 182 Ill. 2d 12, 24 (1998); Bilut v. Northwestern Univ., 296 Ill. App. 3d 42, 49 (1998); Van Winkle v. Owens-Corning Fiberglas Corp., 291 Ill. App. 3d 165, 173 (1997) ("[A] civil conspiracy cannot exist between a corporation's own officers or employees."); see also J. C. Whitney & Co. v. Renaissance Software Corp., 98 F. Supp. 2d 981, 983 (N.D. Ill. 2000) ("Illinois law is clear: a civil conspiracy does not exist between a corporations' own officers or employees." (quotation marks omitted)). Here, defendants argue that because all of the named defendants were employees of the McHenry County sheriff's office at the time of the alleged acts of retaliation, they could not have conspired with one another.

Milliman concedes that all of the defendants were employees of the sheriff's office, and thus the intracorporate conspiracy doctrine would otherwise apply, but argues that he pled sufficient facts in his complaint

to fall within one of the exceptions to the doctrine. "[C]ourts have recognized two exceptions to the Illinois intracorporate conspiracy doctrine. The first exception occurs when a separately incorporated conspirator acts of out self-interest rather than in the interest of the principal corporation. Another exception exists when the conspirators act beyond the scope of their official duties." Georgeson v. DuPage Surgical Consultants, Ltd., No. 05 C 1653, 2005 WL 1799281, at *2 (N.D. Ill. July 26, 2005) (citations omitted); see also Bilut, 296 Ill. App. 3d at 49. In this case, the second exception is easily dealt with—Milliman specifically alleges in the complaint that the defendants were acting in the scope of their official duties and requests that McHenry County be held liable because of that fact. Accordingly, Milliman, since he alleges otherwise in his complaint, cannot now argue that the deputies were acting outside of the scope of their employment. See Richards, 2012 WL 3217627, at *2 ("A plaintiff whose allegations show that there is an airtight defense had pleaded himself out of court, and the judge may dismiss the suit on the pleadings.").

Nevertheless, the complaint alleges sufficient facts to permit this court to draw a reasonable inference that defendants were acting in their self-interest rather than in the interest of the sheriff's office. In his complaint, Milliman alleges that defendants engaged in a series of retaliatory actions over nine months, culminating in his termination, based on Milliman's deposition testimony. It is plausible that these adverse employment actions were taken to minimize the institutional damage to the sheriff's department in light of Milliman's accusations. It is also plausible, however, that the actions were taken by the defendants to punish Milliman and to silence him from any further accusations of wrongdoing which could be detrimental to their careers and potentially expose them to civil or criminal liability. Because, at this stage, this court is obliged to draw all reasonable inferences in Milliman's favor, the complaint plausibly sets out that defendants were acting in their own self-interest rather than the interest of the sheriff's office, and therefore the intracorporate conspiracy doctrine does not apply.

### D. Defendant Krause's Motion to Dismiss Counts I & II.

The final arguments come from Krause alone, who argues that the complaint fails to state a claim against him as to Counts I and II. The complaint states, at Count I, paragraph 24 that "[a]s a result of plaintiff's protected speech the defendants retaliated against plaintiff by engaging in the conduct described in paragraphs 7-12, 14-15, and 18." Count II has the same language, except that "plaintiff's protected speech" is replaced with "plaintiff exercising his protected right to association." However, the only mention of Krause's actions comes at paragraph 13, which sets out that Krause took action against Milliman before the deposition. By the plain language of the complaint, neither Count I nor Count II incorporate any action done by Krause which could plausibly form liability.

In his response, Milliman urges this court to ignore the language of the complaint and argues that he intended to set out a claim for prior restraint against Krause. The court declines Milliman's invitation to ignore the plain language of the complaint. Should Milliman wish to amend his complaint, he should do so by following the procedures set out in Federal Rule of Civil Procedure 15. Nevertheless, because Counts I and II fail to set out a claim against Krause, this court will also grant that part of Krause's motion to dismiss.

### III. CONCLUSION

Defendant Krause's motion to dismiss is granted as to all three counts. The motion to dismiss filed by the remainder of the defendants is denied.

---

1. This information was not included in the complaint, instead the defendants attached the pertinent pages of Milliman's deposition to their motions to dismiss. Although the court is only permitted to review those documents attached to the pleadings when considering a motion to dismiss under Rule 12, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). Milliman's deposition testimony is referred to in his complaint and is central to all of his claims, so this court may consider

those additional pages as part of the pleadings notwithstanding the fact they were attached to the defendants' motions to dismiss.

2. In the motions to dismiss and responses thereto, all of the parties argued Count I, alleging a violation of the freedom of speech, Count II, alleging a violation of the freedom of association, and Count III, alleging the defendants worked together in a civil conspiracy to violate Milliman's constitutional rights, as a single claim for the purposes of qualified immunity. Because the same speech activity—Milliman's deposition—forms the basis of all of the claims, this court shall do likewise.

3. Throughout their briefs, both parties cite to cases concerning the intracorporate conspiracy doctrine as it relates to federal statutes. Because Count III is clearly marked as a state law claim under Illinois law, those cases are inapposite, and it is to Illinois law this court will turn for guidance.